**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEGUNDO PEREIRA,<br><br>*Plaintiff*,<br><br>v.<br><br>MARTIN J. GRUENBERG, Chairman, Federal Deposit Insurance Corporation,<br><br>*Defendant*. | Civil Action No. 20-3836 (TJK) |

**MEMORANDUM OPINION**

Segundo Pereira was removed from his position as head of the Federal Deposit Insurance Corporation's diversity-and-inclusion office. And when the agency needed to hire someone to fill that role, it declined to reinstate him. Pereira sued the agency under Title VII, arguing, among other things, that the agency's decisions to remove and then to not reinstate him were based on his race, sex, and national origin, and that the latter decision was also motivated by retaliatory animus for challenging his removal. Defendant moves for summary judgment. For the reasons explained below, the Court will grant the motion and enter judgment for Defendant.

## I. Background

Pereira is a white Hispanic man. In mid-2014, he was hired as Director of the Federal Deposit Insurance Corporation's ("FDIC") Office of Minority and Women Inclusion ("OMWI"), the agency's Equal Employment Opportunity ("EEO") office responsible for its diversity-and-inclusion program. ECF No. 29-1 ¶ 1. Pereira was hired by Barbara Ryan, a white non-Hispanic woman, who was the FDIC's chief operating officer and chief of staff, and who served as Pereira's direct supervisor during the relevant time. *Id.* ¶¶ 2–3. While OMWI Director, Pereira spearheaded significant restructuring efforts. ECF No. 29 at 7–13.

About a year after Pereira was hired, in the fall of 2015, senior FDIC management received a series of complaints about his leadership and management of OMWI. For example, employees there reported that:

- "[T]hings are not going well. Segundo does not know or understand the OMWI programs, is not trustworthy, and creates turmoil among the staff. . . . He uses trickery, manipulates people, pits employees against each other, and threatens staff. . . . Some staff are contemplating filing complaints, going to the [Office of Inspector General] or going to Congress." ECF No. 29-1 ¶ 4.
- "As the Director of OMWI, Mr. Pereira has created an environment of unfair treatment, discrimination, coercion and retaliation," *id.* ¶ 6, including by "intimidation, character assassination, manipulation, and harassment, and how it creates a hostile work environment," *id.* ¶ 8.
- "[M]orale, comradery, sense of teamwork has gotten lower or is non-existent" in OMWI. *Id.* ¶ 7.[1] *See generally id.* ¶¶ 4–14, 25–26.

In response, Ryan asked the FDIC's ombudsman to conduct an informal review—or "pulse check"—of OMWI. The ombudsman's subsequent report found leadership and management problems with Pereira as well as another member of senior management at OMWI, Melodee Brooks. ECF No. 29-1 ¶ 19. At the start of 2016, based on both the results of the pulse check and her own observations of Pereira as his direct supervisor, Ryan reassigned Pereira to another executive management position outside OMWI. *Id.* ¶ 15. She explained that Pereira's management had created

[1] At times, Plaintiff argues that certain facts are disputed because they lack context or are otherwise unreliable. But the Court treats these facts as undisputed as far as Plaintiff concedes that they in fact occurred. *See Mason v. Geithner*, 811 F. Supp. 2d 128, 143 n.6, 147 nn.14–15, 148 nn.17–18, 154 n.27 (D.D.C. 2011), *aff'd*, 492 F. App'x 122 (D.C. Cir. 2012) (response is "infirm" when the statement is admitted but facts are claimed to be "mischaracterized," "distorted," or "biased and unfair").

"significant turmoil" in OMWI, and staff harbored a "deep level of mistrust and resentment" toward him. *Id.* ¶ 18. Moreover, in Ryan's view, Pereira had not accepted responsibility or acted to address these issues, which led to an unprecedented number of EEO complaints against him. *Id.* As far as Ryan was concerned, Pereira's management threatened the reputation and functioning of the FDIC and OMWI. *Id.*

Ryan appointed Avelino Rodriguez, another white Hispanic man, to take Pereira's place on an interim basis. ECF No. 29-1 ¶¶ 16–17. And after the FDIC conducted a more formal survey of OMWI employees to investigate these concerns with management, in March and April 2016, Pereira's reassignment was made permanent. *Id.* ¶¶ 22–24. In 2018, the OMWI Director position was filled permanently by Saul Schwartz, a non-Hispanic white man. *Id.* ¶¶ 31–36. Ryan, who made the decision, elected not to reinstate Pereira because of her prior concerns about his performance as OMWI Director a few years beforehand. *Id.* ¶ 37. Among the factors Ryan weighed in making her decision was Pereira's performance rating of III (on a scale from I to V) that she gave him on his 2015 managerial performance appraisal. *Id.* ¶¶ 41–46.

Pereira first brought an EEO complaint in mid-2017, after he had been detailed out of OMWI on an interim basis. *See* ECF No. 1 ¶ 2. After Ryan made the decision not to reinstate him, Pereira brought two more EEO complaints against Ryan and the FDIC. *Id.* In December 2020, Pereira sued. The FDIC moves for summary judgment. ECF No. 27.

## II. Legal Standard

Under the Federal Rules, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-*

*Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

To survive summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted). Courts "are not to make credibility determinations or weigh the evidence." *Lopez*, 826 F.3d at 496 (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). But the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Lopez*, 826 F.3d at 496 (emphasis omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. Analysis

### A. Discrimination

Under Title VII of the Civil Rights Act, federal employers may not discriminate "based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a). "Where, as here, the plaintiff has no direct evidence that the adverse employment actions of which she complains were caused by prohibited discrimination," the Court applies the *McDonnell Douglas* burden-shifting framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). In disparate-treatment cases, a plaintiff's prima facie case "consists a showing that '(1) [the plaintiff] is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Webster v. U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 255 (D.D.C. 2017)

(quoting *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006)).[2]

If a plaintiff makes a prima facie showing, "the burden 'must shift to the employer to articulate some legitimate, nondiscriminatory reason for the' adverse action." *Webster*, 267 F. Supp. 3d at 255 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer does so, then the burden shifts back to the plaintiff to show pretext. But "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis omitted). Under those circumstances, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*

Pereira claims that Ryan's decision to remove him as Director of OMWI and not to reinstate him were motivated by racial and national-origin discrimination.[3] The FDIC has articulated legitimate, nondiscriminatory reasons for these decisions: Ryan's view that the turmoil at OMWI

[2] The D.C. Circuit recently overruled its prior precedent requiring "objectively tangible harm" for discrimination cases under Title VII, holding that "an employer that transfers an employee or denies an employee's transfer request because of the employee's race, color, religion, sex, or national origin violates Title VII by discriminating against the employee with respect to the terms, conditions, or privileges of employment." *Chambers v. District of Columbia*, 35 F.4th 870, 872 (D.C. Cir. 2022) (en banc), *overruling Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999). But actionable retaliation claims, at least, "are [still] limited to those where an employer causes 'material adversity,' not 'trivial harms.'" *Black v. Guzman*, No. 22-1873 (BAH), 2023 WL 3055427, at *7 (D.D.C. Apr. 24, 2023) (quoting *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007)) (alteration in original). Pereira's retaliation claim is addressed below.

[3] Pereira has abandoned any claim that he suffered discrimination because of his sex.

was due, at least in part, to Pereira's management, and that Pereira had not accepted responsibility or acted to address the problems he helped create. ECF No. 29-1 ¶ 17. The FDIC is entitled to summary judgment on these claims because Pereira has not produced sufficient evidence to show that the FDIC's proffered reason was a pretext, and that the real reason was discriminatory.

Pereira, for this part, first tries to shift the blame for the problems at OMWI to Brooks, and to hold her up as a comparator, to show that Ryan unlawfully discriminated against him. Pereira asserts that even before he arrived at OMWI, there were problems there caused by Brooks, who was then the acting Director. ECF No. 29 at 6. Yet, Pereira argues, Ryan "fully supported" Brooks. *Id.* at 6; *see* ECF No. 29-4 ¶ 2. Pereira attributes this support to the fact that Brooks is black. ECF No. 29 at 2. Thus, he asserts, because of support from Ryan, after Pereira arrived at OMWI, Brooks remained there as senior deputy director and could continue to cause the same problems, for which Ryan unfairly blamed him. *Id.* at 7–9; *see* ECF No. 31-2 at 4. Pereira also suggests that Brooks "instigated a campaign to undermine and ultimately oust" him from the role to replace him. ECF No. 29 at 30. Finally, Pereira says, Brooks was not removed from OMWI at the same time as Pereira; it was almost another year before Ryan removed Brooks from her post there, only to reinstate her after her EEO complaint was resolved. ECF No. 27-31 at 4–8.

The evidence supporting these theories is not enough to show pretext or that Ryan discriminated against Pereira based on his race and national origin, either in removing him or failing to reinstate him. Most obviously, there is no evidence that Ryan harbored any bias against Pereira based on his race or national origin. To the contrary: at first, Ryan replaced Pereira with *another* white Hispanic man, the demographic against whom she was purportedly biased. ECF No. 29-1 ¶¶ 16–17. More importantly, it was Ryan herself who made great efforts to *hire* Pereira for the role, barely a year beforehand, in the first place. Because "it would be odd to select [him] and then

immediately start ginning up reasons to dismiss [him]," "it is difficult to impute to" the same person "an invidious motivation that would be inconsistent with the decision to hire." *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011).[4]

Pereira's suggestions that *Brooks* was the cause of all the problems at OMWI or that Ryan's comparative treatment of her evinces discrimination against him get him nowhere, either. Nothing about Brooks' alleged management shortcomings suggest that the separate reasons Ryan had to replace Pereira were pretextual, especially when those reasons were documented in both the FDIC's ombudsman's pulse check and the later, more formal management report. And to the extent Pereira simply disagrees with the portion of the blame Ryan assigned to him for the tumultuous state of the office, such a subjective disagreement with his supervisor is of no moment. *See Ey v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 967 F. Supp. 2d 337, 344 (D.D.C. 2013). In addition, even assuming Brooks is an apt comparator to Pereira—even though Brooks was never hired as Director—Ryan's treatment of the two hardly supports a claim of discrimination. Indeed, Ryan initially passed over Brooks for the Director job in *favor* of Pereira. Like Pereira, Brooks was ultimately removed from OMWI because of Ryan's concerns about her management, even if she was eventually reinstated after her own claims of discrimination were settled. But notably, she was not placed in the Director's role to which Pereira believes he is entitled.

Pereira also cites as evidence of discrimination against him Brooks' comment that she

---

[4] Pereira also argues that Ryan discriminated against him by incorporating negative comments into his 2015 managerial performance appraisal but not incorporating the same ones in Brooks' evaluation. ECF No. 29 at 34. There is no evidence that unlawful discrimination had anything to do the incorporation of these comments. And in any event, both Pereira and Brooks received overall ratings of three out of five, and both appraisals contained negative comments from Ryan. ECF No. 29-1 ¶¶ 42–47. *Compare* ECF No. 27-20 *with* ECF No. 27-21.

could not "believe that the FDIC [had] selected a Hispanic as the OMWI Director" and a related comment by another OMWI employee. ECF No. 29-4 ¶ 3; ECF No. 31-2 at 4–5. Pereira claims that Brooks "instigated a campaign to undermine and ultimately oust" him from the role with hopes of replacing him. ECF No. 29 at 30. Although he does not say so, in effect Pereira tries to leverage these statements and Brooks' supposed actions under a "cat's paw" theory, in which "the company official who makes the decision to take an adverse employment action has no discriminatory animus but is influenced by previous company action that is the product of a like animus in someone else." *Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 187 (D.D.C. 2016) (citation omitted). Under such a theory, Pereira needs to show that his "[direct] supervisor perform[ed] an act motivated by [discriminatory] animus . . . *intended* by the supervisor to cause an adverse employment action" and that doing so caused the action. *See Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016) (citation omitted).

The record here cannot sustain a "cat's paw" theory because there is insufficient evidence supporting several links in the chain. To begin, it is not clear that any actions undertaken by Brooks—Pereira's *subordinate*, rather than his supervisor—could support a "cat's paw" theory. *See Morris*, 825 F.3d at 668; *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 n.4 (2011). And even if they could, given that Brooks is not Pereira's supervisor, Pereira would need to show Ryan "acted negligently by allowing [Brooks'] acts to achieve their desired effect though [Ryan] knew (or reasonably should have known) of the discriminatory motivation." *McCullough v. Whitaker*, No. 14-cv-296 (RDM), 2019 WL 171404, at *6 n.1 (D.D.C. 2019) (alteration in original omitted) (quoting *Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 274 (1st Cir. 2014)).[5]

[5] Though several Circuits have extended "cat's paw" liability to the actions of co-workers, not just supervisors, the D.C. Circuit has not weighed in. *See McCullough v. Whitaker*, 2019 WL

Pereira has not even attempted to make that showing.

Moreover, there is insufficient evidence from which a reasonable jury could conclude that Brooks caused the tide of complaints against Pereira. On this point, Pereira points only to his own conclusory allegations, as well as statements by OMWI employees Greg Cofer and Lisa Brown Jones.[6] Among other things, according to Cofer, Brooks lied to one employee that Pereira "was trying to get rid of him" in "an effort to undermine Mr. Pereira's authority in the OMWI staff." ECF No. 31-2 at 5. And Jones said that "Brooks manipulated OMWI employees to think negatively against [Pereira] because she wanted the Director position." ECF No. 31-3 at 5. But none of this comes close to evidence from which a reasonable jury could conclude that Brooks—as opposed to the complainants themselves—was responsible for the many complaints against Pereira made by OMWI staff. True, some complaints were anonymous, but others were signed by OMWI employees willing to stand by their claims. *See, e.g.*, ECF No. 27-4 at 65–73 (complaints from OMWI employee regarding Pereira's "intimidation, character assassination, manipulation, and harassment, and how it creates a hostile work environment"). And on their face, these detailed complaints appear to have been based on these employees' personal observations of Pereira, rather than anything Brooks said or did, or even misunderstandings that could be attributed to someone trying to manipulate them. *See, e.g.*, *id.* at 57–58. Finally, that the FDIC's ombudsman's pulse check and later, its more formal report found problems with *Brooks'* management (in addition to

171404, at *6 n.1. Those that have extended it require negligence by the decisionmaker. *See, e.g.*, *Velazquez-Perez*, 753 F.3d at 274. *Cf. Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) ("To establish liability when a plaintiff is harassed by *his or her co-workers*, the plaintiff must prove that the employer was at least negligent in not preventing or correcting the harassment.").

[6] Pereira also cites a statement of Amy Del Valle that is not included in the record. ECF No. 29 at 30.

Pereira's) undermines Pereira's assertion that the complaints about OMWI management were wholly ginned up by Brooks. *See* ECF No. 30-12 at 1.

Closely connected to Pereira's argument that these complaints stemmed from Brooks' campaign against him, he also asserts that they were false, and argues that this too shows that Ryan's decision to fire him was pretextual. Of course, a plaintiff can show pretext with evidence that the reasons the employer gives for a supposedly discriminatory action are false. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17 (1993). But Pereira fails to show that any of the specific factual allegations in these complaints—let alone some substantial number of them—were false. And in any event, setting aside a "cat's paw" theory of liability, the real question is whether Ryan genuinely believed that, collectively, those complaints (and her own personal observations) depicted a problem with Pereira's management that justified the actions she took. That is so because "the issue is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'" *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alterations in original) (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). Pereira provides no reason to question Ryan's honest belief in this regard.

At most, Pereira can point to evidence that undermines *one* of the specific bases for Ryan's decision to remove him: that Pereira had misled her about the number of OMWI employees he had reassigned. ECF No. 29 at 28–29. While Pereira was Director, Ryan accused him of "being less than forthright with [her] regarding the number of people [he] reassigned" because, according to Ryan, he told her that he had reassigned only two people but in fact he had "reassigned more." ECF No. 29-4 ¶ 5. Pereira supplies a factual explanation for why this was a misunderstanding, and why, assuming he is right, Ryan was wrong. ECF No. 29 at 15–17, 29. But at most, this

points to a misunderstanding, and Pereira does not explain why all the other reasons behind Ryan's decision were false or pretextual, too.

Next, Pereira argues that Ryan's decision to hire Schwartz as permanent OMWI Director smacks of discrimination because he was "objectively more qualified" than Schwartz. ECF No. 29 at 31–32. To support such an inference, Pereira needs to show his credentials were "stark[ly] superior" to that of the successful candidate. *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003); *see also Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) ("In order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination."). He has not come close to making that showing. The agency provided reasoned justifications for hiring Schwartz, including the improvement in OMWI's functioning while he was in charge, *see* ECF No. 27-2 at 30, and Pereira even admits, "I don't contest [Schwartz's] qualifications," just that "I do not believe his credential and qualifications exceed mine," ECF No. 27-17 ¶ 24. But merely arguing he is marginally more qualified is insufficient, because courts are ill-equipped to second-guess an employer's weighing of the qualifications of competing candidates without any other evidence of discrimination. *See generally Fischbach.*, 86 F.3d at 1183 (The Court will not "second-guess an employer's personnel decision absent demonstrably discriminatory motive." (citation omitted)).

Pereira also says the selection process used to hire Schwartz is evidence of discrimination. *See* ECF No. 29 at 32–34. Preselection of one candidate over another may "shed[] light on an employer's motivation for a hiring decision." *Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 310 (D.D.C. 2005). But even "if there had been favoritism in [the] selection process, courts have held that '[p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII.'" *Baylor v. Powell*, 459 F.

Supp. 3d 47, 59 (D.D.C. 2020) (citation omitted).

Even if the process here suggested that Schwartz were favored—even preselected—over Pereira for the position, that does not suggest unlawful discrimination. The FDIC restricted applicants for the permanent Director position to those who had held it on a permanent or acting basis for at least one year. ECF No. 29 at 34. In addition, the FDIC issued an "excepted service" vacancy announcement that allowed attorneys to apply without needing to satisfy certain requirements linked to the non-attorney "merit-promotion internal candidates" announcement. *Id*. at 33. So both Pereira and Schwartz (the latter of whom was serving as acting Director at the time) were eligible to apply—and did. *See id.* at 31. Pereira argues that the OMWI Director position did not call for legal expertise that justified attorneys, such as Schwartz, being allowed, or even solicited, to apply. *See id.* at 33. But even if the "excepted service" announcement were intended to allow Schwartz to apply, at most a jury could find that the process was crafted to make him eligible, not to exclude Pereira because of Pereira's race or national origin. *See Kilby-Robb v. Devos*, 246 F. Supp. 3d 182, 198 (D.D.C. 2017) ("[F]avoritism based on criteria other than [race, color, age, or other protected characteristics] . . . does not violate the federal anti-discrimination laws and does not raise an inference of discrimination.") (citation omitted). To repeat, even if Ryan had in fact preselected Schwartz because of his qualifications, including the job he did as acting Director, that does not bespeak unlawful discrimination against Pereira.

**B.     Retaliation**

Title VII, likewise, prohibits federal employers from retaliating against an employee for engaging in protected activities such as filing an EEO complaint alleging employment discrimination. 42 U.S.C. § 2000e-3(a). In retaliation cases, a plaintiff must show she "engaged in protected activity, as a consequence of which her employer took a materially adverse action against her."

*Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (citation omitted). As above, without direct evidence of retaliation, the same *McDonnell Douglas* burden-shifting framework applies. *Lathram*, 336 F.3d at 1089 n.3; *see Kirkland v. McAleenan*, No. 13-cv-194 (RDM), 2019 WL 7067046, *23 (D.D.C. Dec. 23, 2019). Should the plaintiff satisfy her initial burden, and the employer articulates a legitimate, non-retaliatory reason for the adverse action, the burden shifts back to the plaintiff to show pretext. And in that situation, as with discrimination, "the 'central question' left for the Court to decide is whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted [legitimate] reason was not the actual reason,' but a pretext for unlawful . . . retaliation." *Davis v. Vilsack*, No. 17-cv-245 (TJK), 2023 WL 6065012, at *6 (D.D.C. Sept. 18, 2023) (citing *Brady*, 520 F.3d at 494).

After Pereira was removed from his position as OMWI Director, he filed a series of EEO complaints with the FDIC, and now argues that the agency's decision not to reinstate him in that role was made in retaliation for that protected activity. *See* ECF No. 29 at 31. But he offers no evidence beyond what was insufficient to show evidence of discrimination, described above, for a jury to find that the agency's explanation for removing him from the Director position and not reinstating him was pretextual, and that the actual reason was retaliatory. He relies mainly on the FDIC's selection of Schwartz as his permanent replacement. *Id.* But for the reasons already explained, nothing about that hiring provides a basis on which a reasonable jury could conclude that the FDIC was motivated by unlawful discrimination or retaliation. Without more, Pereira's retaliation claim fails alongside his claim of discrimination.

## IV. Conclusion

For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 6, 2024